UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK                    x
                                                :
VERONICA KLOS, individually and on behalf       :
of all other similarly situated,                :
                                                :         Case No. 1:26-cv-03456
                                    Plaintiff,  :
                                                :
v.                                              :         **CLASS ACTION COMPLAINT**
                                                :
TBD BRANDS, LLC,                                :         **JURY TRIAL DEMANDED**
                                                :
                                    Defendant.  :
                                                x

Plaintiff Veronica Klos ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action against TBD Brands, LLC ("Defendant"), based on Defendant's false and deceptive advertising and labeling regarding its YöPup Frozen Yogurt Cups. Plaintiff makes the following allegations based on the investigation of her counsel, and on information and belief, except as to allegations pertaining to Plaintiff individually, which are based on her personal knowledge.

## INTRODUCTION

1.      During the statute of limitations period, Defendant has marketed, labeled, advertised, and sold its YöPup Frozen Yogurt Cups (the "Product[s]")[1] to consumers with packaging that has prominently and unequivocally represented that they contain yogurt.

2.      The Products' packaging states, in bold print, that the products are "Frozen Yogurt Cups" (the "*Yogurt Claim*").

---

[1] The Products consist of YöPup Frozen Yogurt Cups that have been sold with packaging that has borne the Yogurt Claim, including but not limited to the Banana and Peanut Butter, Apple Juice and Cheddar, and Pumpkin and Bacon flavors.

3.      Reasonable consumers believe, based on the *Yogurt Claim*, that the Products contain yogurt, which is widely touted for its gut-healthy properties. However, unbeknownst to consumers, the Products do not contain yogurt, as defined under federal regulations, and as consumers commonly understand the term.

4.      Since 1905, yogurt has been characterized by two specific lactic acid-producing bacteria, *Lactobacillus delbrueckii subsp. bulgaricus* and *Streptococcus termophilus* (the "Yogurt Bacteria"). These bacteria, when combined with dairy ingredients, turn the sugar in the dairy into lactic acid which thickens the dairy ingredient and provides the health benefits for which yogurt is famous.[2] The Food and Drug Administration ("FDA") has codified this historical definition of yogurt by implementing a yogurt standard of identity, which states: "[yogurt is produced by] culturing one or more of the basic dairy ingredients [including skim milk] . . . with a characterizing bacterial culture that contains the lactic acid-producing bacteria, *Lactobacillus delbrueckii subsp. bulgaricus* and *Streptococcus termophilus*." 21 C.F.R. § 131.200(a).

5.      Independent third-party testing confirms that the Products do not contain the Yogurt Bacteria. Specifically, on or about February 16, 2026, Exact Scientific Services, Inc., an ISO 17025 certified laboratory, conducted whole genome next generation DNA testing of the Products. This testing amplifies small amounts of genetic material in a sample, including fragmented DNA or DNA from dead microbes, enabling scientists to establish the presence of even trace amounts of an organism in a sample.[3] Neither *Lactobacillus delbrueckii subsp. bulgaricus* nor *Streptococcus termophilus* were detected in the Products. Accordingly, the *Yogurt Claim* is false and deceptive.

---

[2] https://nutritionsource.hsph.harvard.edu/food-features/yogurt/ (last accessed June 8, 2026).
[3] Illumina, *NGS vs qPCR*, NGS for Beginners, www.illumina.com/science/technology/next-generation-sequencing/beginners/advantages/ngs-vs-qpcr.html (last accessed June 8, 2026).

6.      Plaintiff seeks relief in this action individually, and on behalf of all other similarly situated individuals who purchased the falsely and deceptively labeled Products during the statute of limitations period, for violations of New York's General Business Law § 349, New York's General Business Law § 350, Breach of Express Warranty under New York's UCC § 2-313, and fraud.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000, and there is diversity of citizenship between some members of the proposed Classes and Defendant.

8.      This Court has personal jurisdiction over Defendant because Defendant has sufficient minimum contacts within the State of New York, and/or otherwise intentionally avails itself of the markets in the State of New York through the promotion, marketing, and sale of the Products in this State to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District. Defendant regularly conducts business throughout this District and made the misrepresentations that had a substantial effect in this District. Further, a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Plaintiff resides in this District, and she purchased the Product in this District within the statute of limitations period.

**PLAINTIFF**

10.    Plaintiff is a citizen of the United States and the State of New York. She currently resides in Brooklyn, New York.

11.    In or around August 2025, Plaintiff purchased the Product from a Petco in Brooklyn, New York. Plaintiff saw and relied on the *Yogurt Claim* in making this purchase. More specifically, Plaintiff reasonably believed, based on the *Yogurt Claim*, that she was buying a product that contains yogurt. This belief was an important part of her decision to purchase the Product. Had Plaintiff known that the Product does not contain yogurt, she would not have purchased the Product, or she would have paid less for it. Thus, Plaintiff has suffered injury in fact and lost money as a result of Defendant's misleading, false, unfair, and deceptive practices, as alleged herein.

**DEFENDANT**

12.    Defendant TBD Brands, LLC is a New Hampshire limited liability company with its principle place of business in Exter, NH. Its sole member is Jody T. Rodgers, an individual who, based on information and belief, is a citizen of New Hampshire.

**FACTUAL ALLEGATIONS**

A.    **The Products**

13.    The Products consist of YöPup Frozen Yogurt Cups that have been sold with packaging that has borne the *Yogurt Claim*, including but not limited to the Banana and Peanut Butter, Apple Juice and Cheddar, and Pumpkin and Bacon flavors.

14.    The Products are generally sold in packages containing four 3.5 fl oz cups. They are also sold as individual 3.5 fl oz cups. The *Yogurt Claim*, however, is prominently displayed in the same manner across all package sizes and types.

4

15.     Representative images are set forth below:



**B.     The *Yogurt Claim* is False and Deceptive**

16.     As can be seen from the above images, the *Yogurt Claim* conveys the unequivocal message that the Products contain yogurt.

17.     However, the Products do not contain yogurt.

18.     The Federal Food, Drug & Cosmetic Act ("FDCA") regulates the sale of food and beverages to the consuming public. 21 U.S.C. § 301. The Act was promulgated in significant part to prevent consumer deception and was principally implemented through the creation of a uniform system of labeling.

19.     The FDCA and its implementing regulations have identified the words and statements that must or may be included on labeling, and they have specified how prominently and conspicuously those words and statements must appear. These provisions, known as "Standards of

Identity," ensure that statements are presented on labels in such a way as to likely be read and understood by the ordinary individual under customary conditions of purchase and use. 21 U.S.C. § 343(f).

20.    The FDCA's definition of yogurt is thorough, and it breaks down specifications based on the type of dairy used, the amount of milkfat contained in the finished product, etc. It provides, in part, "[y]ogurt is the food produced by culturing one or more of the basic dairy ingredients specified in paragraph (b) of this section and any of the optional dairy ingredients specified in paragraph (c) of this section with a characterizing bacterial culture that contains *the* lactic acid-producing bacteria, *Lactobacillus delbrueckii subsp. bulgaricus and Streptococcus thermophilus*." 21 C.F.R. § 131.200(a) (emphasis added).

21.    Thus, yogurt is made by adding the particular lactic acid-producing bacteria *Lactobacillus delbrueckii subsp. bulgaricus* and *Streptococcus thermophilus* (the "Yogurt Bacteria") to a basic dairy ingredient (i.e., milk) to ferment it. This is how reasonable consumers believe that yogurt is made.

22.    Independent third-party testing confirms that the Products do not contain the Yogurt Bacteria. Specifically, on or about February 16, 2026, Exact Scientific Services, Inc. conducted DNA testing of the Products. Exact Scientific Services, Inc. is a reputable independent food testing laboratory. It is ISO 17025 certified,[4] meaning it has satisfied international standards for the competency of its testing and calibration.[5] Exact Scientific Services, Inc.'s testing did not detect either *Lactobacillus delbrueckii subsp. bulgaricus* or *Streptococcus termophilus* in the Products.

---

[4] https://exactscientific.com/about/ (last accessed June 8, 2026).
[5] https://www.iso.org/ISO-IEC-17025-testing-and-calibration-laboratories.html (last accessed June 8, 2026).

23.    The accuracy of this testing is further supported by the Guaranteed Analysis on the Products' back label, which states that the "Total Microorganisms" include L. Acidophilus, B. Longum, L. Casei, and B. Bifidum). Neither *Lactobacillus delbrueckii subsp. bulgaricus* nor *Streptococcus thermophilus* are mentioned.



24.    Thus, the *Yogurt Claim* is false under federal regulations and it is deceptive because it misleads reasonable consumers into believing the Products contain yogurt when they do not.

### C.    The *Yogurt Claim* is Material

25.    Consumers prefer to purchase healthy foods for their pets and are willing to pay a premium on foods marketed and labeled as being healthy.[6]

26.    Because of its reputation as a health food, there is a "health halo" surrounding the presence of yogurt in a product. The health halo effect is the act of "overestimating the healthfulness of an item based on a single claim, such as being low in calories or low in fat."[7] Over the past several decades, the yogurt industry has boomed into prominence, estimated to be worth $3.13 billion in 2025.[8]

---

[6] *See* https://www.bbc.com/worklife/article/20240214-human-grade-luxury-pet-food-market (last accessed June 8, 2026).

[7] *See* "The health halo: how good PR is misleading shoppers," John Peloza and William Montford, https://www.theguardian.com/sustainable-business/2015/mar/11/know-what-you-eat-health-halo (last accessed June 8, 2026).

[8] *See* https://www.fortunebusinessinsights.com/industry-reports/yogurt-market-100212 (last accessed June 8, 2026)

27.     The Yogurt Bacteria are unique because they "immediately begin feeding on lactose, the natural sugar found in milk, and as they consume it they produce lactic acid. That single chemical reaction is the heart of yogurt fermentation."[9]

28.     Defendant is well-aware of the key role that the Yogurt Bacteria play in yogurt fermentation, and it even goes so far as to falsely tout that such bacteria are present in the Products. On its website, Defendant explains why the Yogurt Bacteria, and their ability to "break down lactose" are essential for specifically for dogs:[10]

# Why Yogurt?

Dogs generally struggle to digest dairy products due to the lack of lactase enzymes in their systems. Without these enzymes, the lactose in dairy foods cannot be broken down, resulting in digestive upset. Yogurt is one of the few dairy products that offers the solution; the bacteria used to create yogurt, breaks down lactose as it feeds and multiplies; this process renders the lactose 'predigested state' and provides lactase as a byproduct. How great is that?!

29.     Further propagating the misconception that the Products contain yogurt, Defendant states on its website: "[o]ur primary ingredient of low fat yogurt is enhanced with potassium . . . ," "[w]e know how good yogurt is for dogs . . . ," and "[i]n addition to the known benefits of yogurt, we have added pumpkin . . .":[11]



This flavor combination was so popular in our original organic line, we decided to bring it to our All Natural offering. Our primary ingredient of low fat yogurt is enhanced with potassium and fiber rich bananas, coupled with the antioxidants and bursting flavor of natural peanut butter.

We leave out the added sugar, salt and preservatives to bring a long lasting frozen treat, bursting with flavor and billions of probiotics. Yes, vets recommend any of our flavors for daily serving, to ensure a robust population of good bacteria in your dog's digestive tract.



---

[9] https://www.miamiherald.com/living/article315840400.html (last accessed June 8, 2026).
[10] https://yoghund.com/products/frozen-yogurt-cups/ (last accessed June 8, 2026)
[11] *Id.*





We know how good yogurt is for dogs, but we decided to liven things up with crisp apple juice and real cheddar cheese. The added flavor and vitamins make this an irresistible combination your dog is sure to enjoy. They'll have no idea the billions of beneficial cultures they're ingesting will keep them on the top of their game. After all, prevention is the best medicine!





This flavor combination is a home run for dogs! In addition to the known benefits of yogurt, we have added pumpkin; a yummy taste and a great source of fiber that helps with digestive regularity and tummy issues. Then comes the irresistible taste of bacon, just because dogs can't get enough! Don't be surprised when your best friend starts worshiping the freezer, waiting for the next yummy cup of Pumpkin & Bacon YöPup.

30.    Similarly, while shopping online, the Products are described as "[r]eal frozen yogurt" on Petco's website.[12]

31.    Accordingly, Defendant knows that consumers understand yogurt to be made with the Yogurt Bacteria, and that the inclusion of these bacteria is material. Defendant capitalized on the yogurt health halo by knowingly and intentionally misleading consumers to believe that the Yogurt Bacteria are present in the Products.

## CLASS ACTION ALLEGATIONS

32.    Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 and all other applicable laws and rules, individually, and on behalf of all members of the following Class: All people who purchased at least one of the Products in the State of New York within the applicable statute of limitations period (the "Class").

---

[12] https://www.petco.com/product/yog-dog-375z-naturl-apchd-cup-291447 (last accessed June 8, 2026).

33.     Excluded from the Classes are the following individuals and/or entities: Defendant and its parents, subsidiaries, affiliates, officers and directors, current or former employees, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

34.     Plaintiff reserves the right to modify or amend the definition of the proposed Class before the Court determines whether class certification is appropriate.

35.     Plaintiff is a member of the Class.

36.     <u>Numerosity</u>: The proposed Class is so numerous that joinder of all members would be impractical. The Products are sold throughout the State of New York. The number of individuals who purchased Products during the relevant time period is at least in the hundreds. Accordingly, Class members are so numerous that their individual joinder herein is impractical. While the precise number of Class members and their identities are unknown to Plaintiff at this time, these Class members are identifiable and ascertainable.

37.     <u>Common Questions Predominate</u>: There are questions of law and fact common to the proposed Classes that will drive the resolution of this action and will predominate over questions affecting only individual Class members. These questions include, but are not limited to, the following:

   a. Whether Defendant misrepresented material facts and/or failed to disclose material facts in connection with the packaging, marketing, distribution, and sale of the Products;

   b. Whether Defendant's use of challenged packaging constituted false or deceptive advertising;

c.  Whether Defendant engaged in unfair, unlawful and/or fraudulent business practices;

d.  Whether Defendant's unlawful conduct, as alleged herein, was intentional and knowing;

e.  Whether Plaintiff and the Class are entitled to damages and/or restitution, and if so, in what amount; and

f.  Whether Plaintiff and the Class are entitled to an award of reasonable attorneys' fees, interest, and costs of suit.

38.     Defendant has engaged in a common course of conduct giving rise to violations of the legal rights sought to be enforced uniformly by Plaintiff on behalf of the proposed Class. Similar or identical statutory and common law violations, business practices, and injuries are involved. The injuries sustained by members of the proposed Class flow, in each instance, from a common nucleus of operative fact, namely, Defendant's deceptive packaging and advertising of the Products. Each instance of harm suffered by Plaintiff and Class members has directly resulted from a single course of illegal conduct. Each Class member has been exposed to the same deceptive practice, as (a) the packaging of Products bears the same material *Yogurt Claim*, and (b) the Products do not meet this representation of fact. Therefore, individual questions, if any, pale in comparison to the numerous common questions presented in this action.

39.     Superiority: Because of the relatively small damages at issue for each individual Class member, no Class member could afford to seek legal redress on an individual basis. Furthermore, individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.

Individualized litigation also presents a potential for inconsistent or contradictory judgments. A class action is superior to any alternative means of prosecution.

40.    Typicality: The representative Plaintiff's claims are typical of those of the proposed Class, as all members of the proposed Class are similarly affected by Defendant's uniform unlawful conduct as alleged herein.

41.    Adequacy: Plaintiff will fairly and adequately protect the interests of the proposed Class as her interests do not conflict with the interests of the members of the proposed Class she seeks to represent, and she has retained counsel competent and experienced in similar class action litigation. The interests of the members of the Class will be fairly and adequately protected by the Plaintiff and her counsel.

42.    Defendant has also acted, or failed to act, on grounds generally applicable to Plaintiff and the proposed Class, supporting the imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class.

**FIRST CAUSE OF ACTION**
**Violation of New York's Deceptive Acts and Practices Law,**
**New York GBL § 349**

43.    Plaintiff incorporates by reference paragraphs 1-42 of this Complaint as if fully stated herein.

44.    New York GBL § 349 declares unlawful "deceptive . . . acts or practices in the conduct of any business, trade or commerce . . . ." GBL § 349(a).

45.    In its advertising and sale of goods throughout New York, Defendant conducts business and trade within the meaning of GBL § 349(a).

12

46.     As alleged in detail above, Defendant committed deceptive acts and practices in that it misrepresented material facts about its Products, including by making the *Yogurt Claim* when, in fact, the Products do not contain yogurt.

47.     Defendant, as manufacturer and marketer of the Products, was in a position to know or should have known the true quality of its Products, *i.e.,* that the Products do not contain yogurt.

48.     The facts misrepresented by Defendant were material in that Plaintiff and the members of the Class would have considered them important in deciding whether to purchase the Products.

49.     The foregoing deceptive acts and practices were consumer-oriented in that they were directed at Plaintiff and members of the Class.

50.     As shown above, Defendant's misrepresentations regarding the Products were likely to deceive reasonable consumers and the public.

51.     As a result of these false and misleading practices, Defendant induced Plaintiff and the Class to purchase the Products that Plaintiff and members of the Class would not have purchased, or would have paid substantially less for, had Defendant been truthful about the nature of its Products.

52.     Plaintiff and the Class seek full statutory damages to the full extent available under GBL § 349 and any other damages available under the law, including actual damages, fifty dollars, or both, whichever is greater, as well as treble damages, reasonable attorneys' fees, and all other remedies this Court deems proper.

## SECOND CAUSE OF ACTION
### Violation of New York's False Advertising Law, New York GBL § 350

53.     Plaintiff incorporates by reference paragraphs 1–42 of this Complaint as if fully stated herein.

54.     New York GBL § 350 provides in relevant part: "False advertising in the conduct of any business, trade or commerce . . . in this state is hereby declared unlawful."

55.     In its advertising and sale of goods throughout New York, Defendant conducts business and trade within the meaning of GBL § 350.

56.     GBL § 350-a(1) defines false advertising as:

> advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity . . . to which the advertising relates under the conditions prescribed in said advertisement, or under such conditions as are customary or usual.

57.     As alleged above, Defendant committed false advertising in that it misrepresented material facts about its Products, including by making the *Yogurt Claim*, when in fact the Products do not contain yogurt.

58.     Defendant, as manufacturer and marketer of the Products, was in a position to know or should have known the true quality of its Products, *i.e.,* that the Products do not contain yogurt.

59.     The facts misrepresented by Defendant were material in that Plaintiff and the members of the Class would have considered them important in deciding whether to purchase the Products.

14

60.     The foregoing deceptive acts and practices were consumer-oriented in that they were directed at Plaintiff and members of the Class.

61.     As shown hereinabove, Defendant's misrepresentations regarding the Products were likely to deceive reasonable consumers and the public.

62.     As a result of this false and misleading advertising, Defendant induced Plaintiff and the Class to purchase the Products that Plaintiff and members of the Class would not have purchased, or would have paid substantially less for, had Defendant been truthful about the nature of its Products.

63.     Plaintiff and the Class seek full statutory damages to the full extent available under GBL § 350 and any other damages available under the law, including actual damages or five hundred dollars, whichever is greater, as well as treble damages, reasonable attorneys' fees, and all other remedies this Court deems proper.

## THIRD CAUSE OF ACTION
### Breach of Express Warranty

64.     Plaintiff repeats the allegations contained in paragraphs 1-42 above as if fully set forth herein.

65.     Plaintiff brings this claim individually and on behalf of members of the proposed Class against Defendant.

66.     New York's express warranty statutes provide that "(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." N.Y. U.C.C. § 2-313(1).

67.     Defendant has expressly warranted on the Products' packaging that the Products are "Frozen Yogurt Cups." However, as alleged herein, this express representation is patently false,

15

as the Products do not contain yogurt.

68.    These representations about the Products: (a) are affirmations of fact or promises made by Defendant to consumers that the Products are "Frozen Yogurt Cups"; (b) became part of the basis of the bargain to purchase the Products when Plaintiff and other consumers relied on the representation; and (c) created an express warranty that the Products would conform to the affirmations of fact or promises. In the alternative, the representations about the Products are descriptions of goods which were made as part of the basis of the bargain to purchase the Products, and which created an express warranty that the Products would conform to the product description.

69.    Plaintiff and members of the proposed Class reasonably and justifiably relied on the foregoing express warranties, believing that the Products did in fact conform to those warranties.

70.    Defendant has breached the express warranties made to Plaintiff and members of the Classes by not including yogurt in the Products.

71.    Plaintiff and members of the Class paid a premium price for the Products but did not obtain the full value of the Products as represented. If Plaintiff and members of the Class had known the true nature of the Products, they would not have been willing to pay the premium price associated with the Products.

72.    In or about March 2026, Plaintiff learned that Defendant's Products do not contain yogurt. Upon learning that Defendant did, in fact, breach the express warranty, Plaintiff notified Defendant of the breach by sending a pre-suit notice letter via Certified Mail, Return Receipt Requested, on April 3, 2026. Plaintiff's pre-suit notice letter was received by Defendant in April, 2026.

## FOURTH CAUSE OF ACTION
### Fraud by Misrepresentation

73.     Plaintiff repeats the allegations contained in paragraphs 1-42 above as if fully set forth herein.

74.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

75.     Defendant intentionally and knowingly represented that the Products were "Frozen Yogurt Cups" which led reasonable consumers to believe that the Products contain yogurt.

76.     The *Yogurt Claim* on the Products' packaging is false because the Products do not contain yogurt.

77.     Defendant knew that the representation on the Products' packaging was false because: (a) Defendant was in a superior position to know the true state of facts about its Products, including the ingredients used therein; and (b) Defendant knew that Plaintiff and the Class could not reasonably have been expected to learn that the Products do not contain yogurt.

78.     Defendant knew or should have known that the representation on the Products' packaging would justifiably induce Plaintiff and the Class members to purchase the Products.

79.     Plaintiff and members of the Class reasonably relied on the *Yogurt Claim*, and Defendant knows that its customers trust the quality of its products and reasonably expect Defendant's Products do, indeed, contain yogurt as represented. Defendant also knows that consumers actively seek out yogurt various reasons, including the health halo surround yogurt and key role that the Yogurt Bacteria play in the fermentation process, and are willing to pay more for products that they believe contain yogurt.

80.     Plaintiff and members of the Class were harmed as a direct and proximate result of Defendant's conduct. Plaintiff and the members of the Class suffered actual damages, including

17

by: (1) paying a price premium for Products they reasonably believed were "Frozen Yogurt Cups"; (2) purchasing Products they would not have purchased, or would have paid significantly less for, had they known that the Products do not contain yogurt; and/or (3) receiving a Product that was worth significantly less than represented because it does contain yogurt.

81.  Plaintiff's and members of the Class's reliance on Defendant's representations was a substantial factor in the harm and detriment caused to them. That harm and detriment resulted from the disparity between the Products' true quality, characteristics, and ingredients and the representations conveyed on the Products' packaging by Defendant, which misled and harmed consumers of the Products, such as Plaintiff and members of the Classes.

82.  Plaintiff and the members of the Classes seek actual damages, declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the proposed Class, prays for the following relief:

A.  Certification of the proposed Class, appointment of Plaintiff as representatives of the Class, and appointment of undersigned counsel as counsel for the Class;

B.  A declaration that Defendant's actions complained of herein violated the statutes referenced herein;

C.  For an order finding in favor of Plaintiff and Class members on all counts asserted herein;

D.  For actual, compensatory, statutory, nominal, and/or punitive damages in amounts to be determined by the Court and/or jury;

E.  For prejudgment interest on all amounts awarded;

F.     For an order awarding Plaintiff and Class members their reasonable attorney fees, expenses, and costs of suit; and

G.     For such relief as the Court deems necessary, just, and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff requests a jury trial on all issues so triable.

Dated: June 9, 2026                          **FARUQI & FARUQI, LLP**

By:  */s/ Innessa M. Huot*
Innessa M. Huot (IM2886)
685 Third Avenue, 26th Floor
New York, New York 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
ihuot@faruqilaw.com

**FARUQI & FARUQI, LLP**
Lisa T. Omoto (*pro hac vice* forthcoming)
1901 Avenue of the Stars, Suite 1060
Los Angeles, CA 90067
Telephone: (424) 256-2884
Email: lomoto@faruqilaw.com

*Counsel for Plaintiff Veronica Klos and
the Proposed Class*